UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| SAMUEL DAVIS, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner, )<br>Social Security Administration, )<br>      Defendant. ) | Civil Action No. 4:14-cv-00051<br><br>**REPORT AND RECOMMENDATION**<br><br>By:   Joel C. Hoppe<br>United States Magistrate Judge |

     Plaintiff Samuel Davis asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–1383f. On appeal, Davis argues that the Commissioner erred in finding that he did not suffer from an impairment that met or medically equaled a listed impairment, determining his residual functional capacity, and finding that he could perform past relevant work or other work that exists in the national economy. Pl. Br. 1, ECF No. 21. This Court has authority to decide Davis's case under 42 U.S.C. §§ 405(g) and 1383(c)(3), and his case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 16.

     After reviewing the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence. Therefore, I recommend that the Court **GRANT** Davis's Motion for Summary Judgment, ECF No. 20, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 25, **REVERSE** the Commissioner's final decision, and **REMAND** this case for additional administrative proceedings.

1

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that other jobs that the claimant can perform exist in the national economy. *See id.* at 472–73.

II. Procedural History

Davis applied for DIB and SSI on May 16, 2011. *See* Administrative Record ("R.") 208–18, ECF No. 18. The application alleged disability caused by leg pain, chest pain, back pain, depression, and hemorrhoids, with an onset date of December 31, 2010. R. 63. At the time he applied for benefits, Davis was 58 years old, *id.*, and he worked part-time as a janitor, R. 245. On initial consideration, Disability Determination Service ("DDS"), the state agency, found that Davis had severe impairments of affective disorder and borderline intellectual functioning, R. 67, but ultimately determined that he was not disabled, R. 85–86. Davis's applications were again rejected on reconsideration. R. 109–10.

On December 13, 2012, ALJ Brian P. Kilbane held a hearing in which Davis and a vocational expert ("VE") testified. R. 44–62. ALJ Kilbane denied Davis's applications in a written opinion dated February 21, 2013. R. 30–43. He determined that Davis's affective

3

disorders and borderline intellectual functioning were severe impairments, R. 33, but also found that other impairments alleged by Davis, including headaches, dizziness, lower back pain, heart murmur, chest pains, shortness of breath, hemorrhoids, and obesity, were not severe, R. 33–35. He then found that Davis's mental impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, in particular Listings 12.04 (Affective Disorders) and 12.05 (Intellectual Disability). R. 35–38.

As to Davis's residual functional capacity ("RFC"),[1] the ALJ determined that Davis could perform a full range of work at all exertional levels, but had non-exertional limitations that precluded him from performing detailed or complex tasks. R. 38. He further opined that Davis would require some special instruction and additional supervision when first learning new tasks, but eventually could do simple, repetitive tasks on a sustained basis in a competitive environment. *Id.* Relying on the VE's testimony, the ALJ found that Davis could perform past relevant work as a custodian, warehouse worker, dye machine tender, and forklift operator. R. 41. In addition, he found that Davis could perform other work as a housekeeper, assembler, and cafeteria attendant. R. 42. Accordingly, the ALJ determined that Davis was not disabled under the Act. R. 43.

The Appeals Council granted Davis's request for review and issued a written decision on June 12, 2014, which identified a number of errors in the ALJ's decision. R. 8–13. First, it determined that based on his body mass index of 47.7, Davis's obesity should have been

---

[1] Residual functional capacity, or "RFC," is an applicant's *maximum* ability to work "on a regular and continuing basis" despite his or her limitations. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record, 20 C.F.R. §§ 404.1545(a), 416.945(a), and reflects the "total limiting effects" of the person's impairments and related symptoms, *id.* §§ 404.1545(e), 416.945(e); *see also* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) ("Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.").

4

considered a severe impairment. R. 9. Because of this impairment, the Appeals Council found that the ALJ's physical RFC determination was in error. *Id.* It adopted the physical RFC assessment of state agency medical consultant Martin Cader, M.D., which indicated that Davis could perform a full range of medium work[2] (as opposed to a full range of work at all exertional levels). R. 9–10. The Appeals Council retained the non-exertional limitations set out in the ALJ's RFC determination. *Id.*

In addition, the Appeals Council found that the ALJ erred in explaining why Davis did not meet the criteria of Listing 12.05. R. 10–11. Based on its own analysis, however, the Appeals Council still found that Davis's impairments did not meet or equal the severity of Listing 12.05. *Id.* Despite the errors in the ALJ's decision, the Appeals Council concurred with his determination that Davis could perform past relevant work as a custodian, warehouse worker, dye machine tender, and forklift operator, as these are all medium-exertion jobs. R. 11. Alternatively, it found that Davis could perform other work existing in significant numbers in the national economy using the framework of Medical-Vocational Rules 203.12 and 203.04. *Id.* Accordingly, the Appeals Council affirmed the ALJ's determination that Davis was not disabled. *Id.*

### III. Discussion

On appeal, Davis assigns several errors to the ALJ's decision.[3] Pl. Br. 1. First, he argues that the ALJ erroneously applied the criteria of Listing 12.05[4] to the facts of his case. *Id.* at 6–11.

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he or she also can do light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).

[3] In his brief, Davis erroneously states that the Appeals Council denied his request for review. Pl. Br. 1. Thus, his arguments only relate to the ALJ's decision and do not account for the Appeals Council's ruling.

5

Case 4:14-cv-00051-JLK-JCH   Document 27   Filed 12/23/15   Page 5 of 14   Pageid#: 606

Second, he argues that the RFC finding was made in error, claiming that the ALJ failed to properly weigh his credibility and the medical opinion evidence. *Id.* at 11–17. Third, he argues that the ALJ erred in finding that he could perform past relevant work or other work existing in the national economy. *Id.* at 17–19.

A.   Listed Impairment

   1.   Facts

On July 27, 2011, DDS consulting physician Chris Cousins, Ph.D., examined Davis and made findings as to his intellectual capacity in a written medical opinion. R. 344–50. He observed that Davis had a work history with multiple different employers, R. 345, and that Davis lived by himself and handled the responsibilities of cooking and shopping, R. 346. He noted that Davis received mostly failing grades in school before dropping out in the fourth grade because, as Davis explained, "daddy said farming came first." R. 345. Davis told Dr. Cousins that he could not spell his name until he had reached the fourth grade, *id.*, and during his mental status examination he was unable to spell the word "world," R. 347. Davis could count backwards from 100 and calculate change from a dollar, but he was unable to count serial 7's. *Id.* Dr. Cousins found Davis's immediate and recent memory, general fund of information, and abstract thinking ability to be poor. R. 347–48. Davis's judgment and commonsense reasoning ability were fair, R. 348, and his remote memory and calculation ability were fair to good, R. 347–48.

Dr. Cousins assessed Davis's intellectual level using the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"). The test yielded a full scale IQ of 65, verbal comprehension index of 58, perceptual reasoning index of 75, working memory index of 77, and processing speed index of

---

[4] In his written decision, the ALJ also considered whether Davis's impairments satisfied the criteria of Listing § 12.04, which addresses affective disorders, and determined that Davis's impairments did not meet or medically equal the severity of that listing. R. 35–38. Davis does not contest this finding.

6

74. R. 348–49. Dr. Cousins opined that Davis's full scale IQ placed his intellectual functioning in the mild range of intellectual disability, but that Davis's adaptive living skills reflected a higher level of intellectual functioning than would be predicted by this score. R. 348. He noted that this disparity could be explained by Davis's limited educational background. *Id.* Because of Davis's higher observed level of adaptive functioning, Dr. Cousins opined that a diagnosis of borderline intellectual functioning was more appropriate. *Id.*

Davis's own statements provide additional information about his functional abilities. In his work history report, Davis listed one former job in which he supervised another employee. R. 301. Davis lived alone and needed no assistance with personal care. R. 261–62. Regarding his activities of daily living, Davis told DDS that he did his own laundry, cooking, cleaning, and shopping; mowed the lawn; drove; and went out alone. R. 258–59, 263–64. He further explained that he could follow instructions, get along with authority figures, and handle changes and stress well. R. 266–67. In a questionnaire regarding his general functioning, Davis stated that he could pay bills, count change, handle a savings account, and use a checkbook or money orders. R. 264. He watched television and played cards with others. R. 265. He could not follow written instructions, however, because he was unable to read. R. 266. In the hearing before the ALJ, Davis testified that he attended school until the eighth grade, could read and write "a little bit," could not do basic math, and could not fill out applications on his own. R. 49. He also stated that he took care of his own personal hygiene and had no issues comprehending or understanding people, R. 56, although he clarified that he had difficulty understanding "big words," R. 57. He explained that he had attempted to get his GED, but was unsuccessful. *Id.*

7

*2. Analysis*

A claimant's severe impairment meets a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that the claimant must prove that she meets all of the criteria of the listing). A claimant who meets the medical criteria for a listing is presumed disabled regardless of his or her vocational profile; thus, satisfying the criteria for a listing requires a claimant to demonstrate a greater severity of impairment than the baseline statutory disability standard of being unable to perform "substantial gainful activity." *Zebley*, 493 U.S. at 532.

Listing 12.05 addresses intellectual disability or "significantly subaverage general intellectual functioning." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Prong 1 of this listing requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.* Prong 2 requires that the claimant meet one of four "level[s] of severity for the disorder," listed as A through D. *Id.* The claimant has the burden of proving that his intellectual disability meets or equals both prongs of Listing 12.05. *Hancock*, 667 F.3d at 476.

The ALJ found that Davis did not meet any of the severity levels necessary for Prong 2.[5] R. 35–38. The Appeals Council agreed with the ALJ's finding as to Levels A and D of Prong 2. R. 10. It disagreed with the ALJ's rationale, however, in finding that Davis did not meet the criteria for Levels B and C. It found that Davis satisfied the requirement of Level B—a "valid verbal, performance, or full scale IQ of 59 or less," 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(B)—because he had a valid verbal comprehension index of 58. R. 10–11. It also found that

---

[5] It appears that the ALJ did not consider the requirements of Prong 1.

8

Davis met the criteria of Level C, which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C). The Appeals Council found that Davis's full scale IQ of 65 fell within the necessary range and his affective disorder was severe and, thus, imposed "an additional and significant work-related limitation of function." R. 10–11.

The Appeals Council determined, however, that Davis failed to satisfy the criteria for Prong 1 because the record did not contain a diagnosis of intellectual disability or evidence supporting such a diagnosis. R. 11. It observed that, other than Dr. Cousins's medical opinion, the record contained no assessment of Davis's intellect, either before or after age 22. *Id.* It determined that Dr. Cousins's findings—that Davis's adaptive living skills exceeded what would be expected based on his IQ, and therefore that a diagnosis of borderline intellectual functioning was more appropriate than a diagnosis of intellectual disability—were consistent with the evidence of record and concluded that Davis did not meet the requirements of Prong 1. *Id.*

Although Davis does not address the explanation given by the Appeals Council, he still argues that he satisfies the criteria for Prong 1. He points to the evidence in the record that establishes he cannot read or write and asserts that "[i]lliteracy undoubtedly falls within the realm of a deficit in adaptive functioning." Pl. Br. 8. In support of this proposition, Davis cites to *Turner v. Bowen*, in which the Fourth Circuit found that a claimant's inability to read or write by age sixteen, after ten years of schooling, was a clear indication of intellectual disability. 856 F.2d 695, 699 (4th Cir. 1988). This case is distinguishable from *Turner*, however. Unlike the claimant in that case, who remained in school for ten years, but was still unable to read, Davis dropped out

9

of school in the fourth grade.[6] In addition, although Davis indicated that he performed poorly while he was in school, his stated reasons for dropping out were for family matters, rather than for academic struggles. As Dr. Cousins observed, Davis's below-average IQ scores are at least in part attributable to his limited education. R. 349. The Appeals Council could reasonably draw the same conclusion.

Furthermore, ample evidence supports Dr. Cousins's conclusion that Davis does not have limitations of adaptive functioning that warrant a diagnosis of intellectual disability. Davis is able to live on his own and independently take care of his personal needs. He can handle money and drive a car. He has an extensive work history, including semi-skilled positions and a supervisory position. These facts suggest that Davis's intellectual limitations are not indicative of the "significantly subaverage intellectual functioning with deficits in adaptive functioning" necessary to meet Listing 12.05, and I therefore find that the Appeals Council's conclusion is supported by substantial evidence.

B.     *Credibility Determination*

Davis also alleges that the ALJ erred by finding that his testimony was not entirely credible. "It is well-settled that 'the [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight.'" *Payne v. Barnhart*, 366 F. Supp. 2d 391, 401 (W.D. Va. 2005) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ need not cite every piece of possibly relevant evidence in the record, failure to explain the weight given to "'obviously probative exhibits'" is reversible error. *Gordon*, 725 F.2d at 236 (quoting *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)).

---

[6] Although Davis testified to the ALJ that he remained in school until eighth grade, R. 49, this statement seems to have been mistakenly made. All other references in the record to Davis's educational history state that he dropped out in the fourth grade, *see* R. 66, 91, 94, 244, 345, 349, and he asserts the same in his brief, Pl. Br. 2, 7–8.

A claimant's statements about symptoms and limitations are obviously probative exhibits. As the Fourth Circuit has observed, an ALJ has a "duty of explanation" when making determinations about the credibility of a claimant's testimony. *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985)). This duty requires the ALJ to make an express finding as to the claimant's credibility and to give reasons for the credibility determination. *Id.* ("If the ALJ discounted Smith's testimony about lifting and carrying heavy appliances, he needed both to say so and to explain why."); s*ee also Sayre v. Chater*, No. 95-3080, 113 F.3d 1232, at *1 (4th Cir. 1997) (unpublished disposition) ("If an ALJ finds complaints of pain or the magnitude of pain to be incredible, the ALJ must give specific reasons for the finding.") (citing *Hammond*, 765 F.2d at 426); *Spencer v. Barnhart*, No. 7:06cv420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) ("If the ALJ discredits the claimant's testimony, he must give 'specific reasons for the finding on credibility….'" (quoting SSR 96-7p)).

When an ALJ fails to make any finding as to a claimant's credibility and the claimant's testimony is critical to the outcome of the case, the ALJ's decision is not supported by substantial evidence. *See Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (holding that an ALJ must make "an explicit credibility finding . . . when credibility is critical to the outcome of the case"); *Tieniber v. Heckler*, 720 F.2d 1251, 1254 –55 (11th Cir. 1985) (requiring an express credibility finding unless implication of credibility or non-credibility is "so clear as to amount to a specific credibility finding"); *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1044 (2d Cir. 1984). *But see Haywood v. Sullivan*, 888 F.2d 1463 (5th Cir. 1989) (per curiam) (failure to make explicit credibility findings is harmless if it is fully apparent from the ALJ's decision that he considered and accepted the claimant's statements).

11

Here, the ALJ failed to make his credibility determination in a way that allows for meaningful review. In his written decision, the ALJ notes that Davis testified to the extent of his back and chest pain, headaches, dizziness, and insomnia, but finds that Davis's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 38–39. He does not, however, state with any specificity which aspects of Davis's testimony he found less than credible. This boilerplate language, with nothing more, frustrates any attempt by the Court to understand how the ALJ's evaluation of Davis's credibility factors into his disability determination. *See Mascio v. Colvin*, 780 F.3d 632, 639–40 (4th Cir. 2015) (remanding for the ALJ's failure to "explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement").

In addition to being vague about *what* his credibility finding entails, the ALJ does not give an adequate explanation as to *why* he came to that conclusion. Instead of any reasoning or analysis regarding Davis's credibility, the ALJ simply summarizes medical evidence from the record without comment. *See* R. 39–40. This summary contains no explanation or rationale for his decision. Furthermore, most of this evidence cited as supporting the ALJ's credibility finding is unrelated to any of the limitations Davis described in his testimony. The ALJ includes a summary of Dr. Cousins's opinion which, although containing a brief mention of Davis's "depressive symptoms" such as insomnia and fatigue, primarily addresses Davis's intellectual functioning and thought processes. *Id.* He also includes descriptions of Davis's alertness, speech, and appearance made by other physicians. R. 40. None of this evidence addresses Davis's credibility regarding the severity of his symptoms.

The ALJ also attempts to support his credibility finding by noting that when Dr. Cousins asked Davis what he enjoys doing, Davis replied, "I'd like to be working." *Id.* From this, the ALJ

12

concludes "that [Davis] is not as limited as he alleges to be." R. 40. I do not find this to be a reasonable inference to draw from that statement. Nothing in Davis's statement suggests that he believed he was able to work and simply chose not to, or otherwise undermines his testimony. This brief and flawed analysis is insufficient to support a finding that Davis's testimony was not fully credible.

Furthermore, the ALJ's error was not harmless. Davis's testimony was not outrageous or incredible, and a reasonable ALJ could have accepted it. If the ALJ had accepted Davis's testimony, he may have given greater weight to Dr. Cousins's assertions that Davis could not maintain regular attendance in the workplace, complete a normal workday or workweek without interruption, perform work activities on a consistent basis, or deal with work-related stresses. *See* R. 40. Dr. Cousins found that Davis's depressive symptoms, particularly insomnia and fatigue, caused these limitations. R. 350. As the VE testified, these limitations could preclude Davis from employment. R. 61–62. Accordingly, I find that the Commissioner's decision is not supported by substantial evidence, and remand is required so that the ALJ may properly evaluate the credibility of Davis's testimony.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Court **GRANT** Davis's Motion for Summary Judgment, ECF No. 20, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 25, **REVERSE** the final decision of the Commissioner, and **REMAND** the case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**<u>Notice to Parties</u>**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such

proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTER: December 23, 2015

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge